# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JESSE PERKINS,

                              :

        Petitioner,                       Case No. 3:12-cv-058

                              :         District Judge Thomas M. Rose
      -vs-                                Magistrate Judge Michael R. Merz

DEBORAH TIMMERMAN-COOPER,
  Warden, London Correctional Institution,

                              :

        Respondent.

---

# REPORT AND RECOMMENDATIONS

---

Petitioner Jesse Perkins brought this habeas corpus action *pro se* to obtain relief from his conviction by a jury in the Montgomery County Common Pleas Court on five counts of felonious assault and consequent sentence of eight years imprisonment which he is now serving in Respondent's custody.

Mr. Perkins pleads the following Grounds for Relief:

> **GROUND ONE:** Petitioner is actually innocent of the charges he was convicted of, and his rights to due process and equal protection of the laws under the U.S. Constitution has been violated, because he was convicted by a jury that lost its way, as there was not sufficient evidence upon which to base his conviction beyond a reasonable doubt, and this all resulted in a violation of all his rights under all of the articles of the United States Constitution.

> **GROUND TWO:** Petitioner received ineffective assistance of trial counsel, to his prejudice, both before, during, and after his criminal trial, and as a result his rights under the United States Constitution and *Strickland vs. Washington*, 466 U.S. 668 was denied.

**GROUND THREE:** Petitioner was under threat, duress, and coercion at the time of his criminal trial, through no fault of his own, because of being threatened by death before the trial started by a man named Anthony Murphy, an [sic] as a result all of Petitioner's rights under the U.S. Constitution, and to a fair trial, and due process was denied.

**GROUND FOUR:** Petitioner was denied all his rights under the U.S. Constitution, and to a fair trial, and due process at the time of his criminal trial, through no fault of his own, because of juror misconduct.

**GROUND FIVE**: Petitioner was denied all his rights under the U.S. Constitution, and to a fair trial, and due process at the time of his criminal trial, through no fault of his own, because a witness who never testified, purposefully avoided his trial attorney's calls because she was on probation and scared to testify.

**GROUND SIX**: Petitioner was denied all his rights under the U.S. Constitution, and to a fair trial, and due process at the time of his criminal trial, through no fault of his own, because a witness, who testified, purposefully with held [sic] the name both before and at trial, who she seen arguing with the victims in the petitioners criminal case just before the assault on them.

**GROUND SEVEN:** Petitioner was denied all his rights under the U.S. Constitution, and to a fair trial through no fault of his own, because the police officers failed to follow policy in bad faith, NAMELY, to preserve the exculpatory evidence at the scene of the crime of the crimes that petitioner was convicted of.

**GROUND EIGHT:** Petitioner was denied all his rights under the U.S. Constitution, and to due process when the state trial court failed to hold an evidentiary hearing on his state postconviction petition and new trial motion filed in the state court, and when it failed to overturn his conviction based upon the new evidence outside the record couldn't have been discovered at the time before, and during trial.

(Petition, Doc. No. 1.)

**Procedural History**

In May, 2008, Mr. Perkins was indicted on five counts of felonious assault arising from a bar fight on March 29, 2008, in which Adam Volkerding, Timothy Wiley, and Kurt Darding were seriously injured. On August 14, 2008, a jury found Perkins guilty on all counts and he was sentenced to eight years imprisonment. He appealed with new counsel, claiming there was insufficient evidence to support the verdict, and the court of appeals affirmed the conviction. *State v. Perkins*, No. 23036, 2009 Ohio 6696, 2009 Ohio App. Lexis 5617 (Ohio App. 2nd Dist. Dec. 18, 2009)("*Perkins 1*")(copy attached to Return of Writ, Doc. No. 7, as Ex. 2). The Ohio Supreme Court declined to hear a further direct appeal.

On June 25, 2009, Mr. Perkins filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 raising seven claims. Four days later he filed a motion for new trial. Both were overruled in the same decision. Mr. Perkins again appealed to the Second District Court of Appeals which affirmed the judgment of dismissal. *State v. Perkins,* No. 24397, 2011 Ohio 5070, 2011 Ohio App. LEXIS 4194 (Ohio App. 2nd Dist. Sept. 30, 2011)("*Perkins 2*"). The Ohio Supreme Court again declined to hear a further appeal.

In March, 2010, Mr. Perkins filed an application to reopen his direct appeal under Ohio R. App. P. 26(B) to plead two claims of ineffective assistance of appellate counsel. The court of appeals denied the application and Perkins took no further appeal to the Ohio Supreme Court.

On February 23, 2012, Mr. Perkins filed his habeas corpus Petition in this Court, raising the eight claims quoted above (Petition, Doc. No. 1). On the same day, the Court ordered Respondent to answer and set a date for Petitioner to file a reply/traverse after the Return of Writ

was filed (Order, Doc. No. 3).   Respondent filed her Return of Writ on June 22, 2012 (Doc. No.

7.)   The time set for filing a reply/traverse has expired and none has been filed.   The case is

therefore ripe for decision.


## Analysis


## Ground One:   Insufficient Evidence


In his First Ground for Relief, Petitioner asserts he was convicted on insufficient evidence.

This was his sole assignment of error on direct appeal and the court of appeals decided it as

follows:

> [*P9]   "THE STATE FAILED TO PROVIDE SUFFICIENT
> EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT
> THAT    APPELLANT    COMMITTED    THE    CHARGED
> OFFENSES, AND THE JURY'S GUILTY VERDICT AMOUNTS
> TO A MANIFEST MISCARRIAGE OF JUSTICE."
>
> [*P10]   Perkins contends that the State did not present evidence
> sufficient to support his convictions. He further contends that the
> jury verdict is against the manifest weight of the evidence. In
> support, he argues that the police officers responding to the scene
> performed a "shoddy investigation." He further claims that "none of
> the initial witness descriptions of the assailant remotely describe
> [him] in any way." He also notes that he presented the testimony of
> ten witnesses at trial, all of whom testified that they did not observe
> Perkins involved in the fighting.
>
> [*P11]   When the issue before the reviewing court is sufficiency
> of the evidence, "the relevant inquiry is, after viewing the evidence
> in the light most favorable to the prosecution, whether any
> reasonable trier of fact could have found the essential elements of
> the crime proven beyond a reasonable doubt." *State v. Jenks* (1991),
> 61 Ohio St.3d 259, 273, 574 N.E.2d 492 Sufficiency is a question of

4

law, which we review *de novo*, with no deference to the finder of fact. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541.

[*P12]   When reviewing a claim that a judgment is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (citation omitted).

[*P13]   Felonious Assault is proscribed in R.C. 2903.11, which provides in pertinent part:

[*P14]   "(A) No person shall knowingly do either of the following:

[*P15]   "(1) Cause serious physical harm to another or to another's unborn;

[*P16]   "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

[*P17]   A person acts "knowingly," "regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22.

[*P18]   "Deadly weapon" is defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A).

[*P19]   Serious physical harm to persons is defined in R.C. 2901.01 and means any of the following:

[*P20]   "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric

5

treatment;

[*P21]   "(b) Any physical harm that carries a substantial risk of death;

[*P22]   "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

[*P23]   "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

[*P24]   "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."

[*P25]   Perkins does not dispute that the pool cue and the beer bottle used to harm the victims are deadly weapons. Furthermore, he does not dispute that Volkerding and Wiley suffered serious physical harm; indeed the parties stipulated to the element of serious harm.

[*P26]   The only real issue raised by Perkins with regard to either the sufficiency-of-the evidence or the manifest-weight claim is his contention that the State failed to prove that he committed the offenses. Perkins claims that any identification of him as the assailant is inherently incredible, because the police did not conduct an adequate investigation at the scene, the eyewitnesses were intoxicated and did not correctly describe him, and because his witnesses testified that he was not involved in the fight.

[*P27]   We begin by addressing the claim that none of the identifications made by the eyewitnesses are believable. First, Perkins notes that all the eyewitnesses who identified him as the assailant admitted that they had been consuming alcohol prior to the fight. Second, he contends that none of the initial descriptions were correct because the witnesses described him as taller and heavier than his actual weight of one hundred and five pounds and his actual height of "about five feet three inches." Matthew Ficklin, a witness to the fight, initially told the police that the assailant was approximately five feet nine inches tall, weighed about one hundred seventy to one hundred ninety pounds, had blond hair and was wearing a long-sleeved white shirt. Darding initially informed the

police that the assailant was approximately five feet eight inches tall and weighed around one hundred fifty to one hundred sixty pounds. Wiley's initial statement indicated that the attacker was about six feet tall and approximately one hundred and fifty pounds.

[*P28]  Neither the fact that the witnesses were drinking, nor the discrepancies in their initial descriptions is enough to compel the conclusion that the verdicts are against the manifest weight of the evidence. While a "weight-of-the-evidence argument permits a reviewing court to consider the credibility of witnesses, that review must be tempered by the principle that weight and credibility questions are primarily for the trier of fact." *State v. Youngblood*, Clark App. No. 07-CA-118, 2009 Ohio 3008. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., *quoting State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, 1997 Ohio App. LEXIS 3709.

[*P29]  Our review of the record, including the transcript of the victims' testimony, does not lead us to conclude that their identifications were so lacking in credibility that no rational jury could rely upon that identification testimony, or that the jury lost its way in doing so. The eyewitnesses readily acknowledged that they had been in the bar, and that they had consumed alcohol. All of the eyewitnesses acknowledged that their estimates of height and weight could be incorrect, but they further noted that they recognized Perkins by his face, which they had clearly observed. [1]

FOOTNOTES

1 We also note that Perkins did not put his actual height and weight into evidence so as to corroborate his claim of discrepancies in the descriptions.

[*P30]  There is evidence in this case to support a finding that Perkins struck Volkerding in the head with a pool stick, that he

7

broke a beer bottle on Darding's head, and that he then used the broken bottle to cut Wiley's face. Ficklin was shown a photo spread from which he identified Perkins as Volkerding's assailant. Ficklin also identified Perkins at trial. Darding did not know Perkins prior to the fight. A friend of Darding's informed him of two website addresses on which he might find the assailant's picture. The friend also gave Darding the initials "J.P." Darding did not find a person he recognized as his assailant on the first website, but did recognize an individual on the second website, and informed the police of the fact. Within three days after the incident, Darding was shown a photo spread from which he identified Perkins as his assailant. At trial, Darding testified that the person he observed attacking Volkerding with a pool stick was the same person who attacked him. Finally, although Wiley did not identify Perkins prior to trial, he did testify at trial that he recognized Perkins as the assailant.

 [*P31]  Although Perkins notes that he presented ten witnesses who indicated that he was not the assailant, we note that some of those witnesses admitted that they were not sure of Perkins's location during the fight. The jury was free to give more weight to the testimony of Ficklin, Darding and Wiley than to the testimony of these other witnesses. Our review of the transcript does not lead us to conclude that the jury was clearly wrong to do so.

 [*P32]  Finally, although the investigating officer indicated that he had been relatively new at his job, and that, in hindsight, he would have performed a more complete investigation at the scene, there is nothing in this record to support a finding that the initial investigation resulted in a wrongful conviction. The outcome of this case depended on the jury's evaluation of eyewitness testimony, including the jury's assessments of the credibility of the various witnesses.

 [*P33]  The record does not indicate that this is the rare case where a jury lost its way, resulting in a manifest miscarriage of justice. We conclude that there is sufficient evidence to support the judgment, and that the judgment is not against the manifest weight of the evidence. Accordingly, the sole assignment of error is overruled.

III

 [*P34]  Perkins's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

*Perkins 1.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas

corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and

then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v.*

*Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of judicial
> deference. First, on direct appeal, "it is the responsibility of the jury
> -- not the court -- to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational
> trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565
> U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per*
> *curiam*). And second, on habeas review, "a federal court may not
> overturn a state court decision rejecting a sufficiency of the
> evidence challenge simply because the federal court disagrees with
> the state court. The federal court instead may do so only if the state
> court decision was 'objectively unreasonable.'" *Ibid.* (quoting
> *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d
> 678 (2010) (slip op., at 5)).

*Coleman v. Johnson*, 566 U.S. ___, 566 U.S. ___, 132 S. Ct. 2060, 182 L. Ed. 2d 978 (2012)(*per*

*curiam)*.

Considering Petitioner's First Ground for Relief in light of these standards, the Magistrate

Judge concludes that the state court's decision is neither contrary to nor an objectively

unreasonable application of clearly established Supreme Court precedent.   The relevant Supreme

Court case is *Jackson v. Virginia*, 443 U.S. 307 (1979).   The *Jackson* standard was incorporated

into Ohio case law in *State v. Jenks*, the Ohio Supreme Court case on which the court of appeals

relied.   *Perkins 1* at ¶ 11. The court of appeals found the jury was entitled to credit the

identification testimony of three witnesses, including two of the victims.   That decision is entitled

to deference from this Court.   The First Ground for Relief should therefore be dismissed with

prejudice.

## Ground Two:   Ineffective Assistance of Trial Counsel

In his Second Ground for Relief, Mr. Perkins claims he suffered ineffective assistance of trial counsel when his attorney did not file a timely new trial motion after hearing tape recordings of telephone calls he made from jail after trial which disclosed what he regards as new evidence. On September 27, 2008, he confirmed with a person known as Justin Higgins that Higgins had told him **before trial** that Anthony Murphy was the person who stabbed Timothy Wiley in the face (Petition, Doc. No. 1, PageID[1] 6-7.)   He claims the attorney did not file the motion because of a conflict of interest in that Anthony Murphy is the attorney's step-daughter's boyfriend.   *Id*. at PageID 8.   Petitioner argues that Higgins' testimony is material because he and Petitioner are the only two witnesses known to Petitioner who could have contradicted Timothy Wiley's identification of Petitioner as his assailant.

Petitioner admits that he had the conversation with Higgins in which Higgins named Anthony Murphy before trial, while Perkins was out on bond.   *Id*.   at PageID 6.   He claims he did not give his trial attorney Higgins' name before trial because Petitioner had received death threats from Murphy if he brought Murphy's name into the case.   *Id*.   at PageID 7.

The governing standard for ineffective assistance of counsel is found in *Strickland v.*

---

1 The abbreviation "PageID" refers to pagination of the electronic record in this Court.   The identification is applied page by page by the Court's filing software as documents are filed so that the PageID reference is unique, after the fashion of numbers applied by a Bates numbering machine.   Respondent's counsel apparently misunderstands this and has used the abbreviation to refer to internal pagination of documents attached to the Return of Writ.   It would, of course, be very helpful to the Court if the Attorney General's Office would file state court records, then reference the PageID in briefing, but that is not what has happened in Respondent's briefing.

*Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d

313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally*

Annotation, 26 ALR Fed 218.

Perkins did not raise this claim of ineffective assistance of trial counsel on direct appeal, but instead pled it as his third ground for relief in his post-conviction petition. In affirming the trial court's judgment on this claim, the court of appeals held:

> The trial court noted that the "newly discovered exculpatory evidence" was actually known by Perkins all along and that Perkins purposefully withheld this possible witness' name from counsel. In his petition for postconviction relief, Perkins states: "This evidence could not have been discovered at trial because the Defendant kept this Justin Higgins mans name hidden from his attorney [sic]." Perkins' trial counsel's representation was not deficient for failing to pursue a matter he did not know about.

*Perkins 2* at ¶ 31.

The name of Justin Higgins as an exonerating eyewitness is not newly-discovered post-trial. Perkins was aware, well before trial, of Higgins' name and what he knew about the bar fight. He also knew of the potential materiality of that testimony: that it could have exonerated him of the Wiley assault if the jury had believed it. No judge would likely have found that this witness was newly discovered and granted a new trial on that basis because Perkins had his name and potential testimony available before trial. Perkins' claim that he did not give his attorney Higgins' name because of fear of Murphy does not make Higgins a newly-discovered witness, but rather a newly-disclosed to counsel witness. Because the late disclosure would not have been a sound legal basis for a motion for new trial, it was not ineffective assistance of trial counsel to fail to file the motion. Therefore the Second District's decision on this claim is neither contrary to nor an objectively unreasonable application of *Strickland* and is entitled to deference.

Petitioner's Second Ground for Relief is without merit and should be dismissed with

prejudice.

## Ground Three:   Denial of Due Process by Threats of Anthony Murphy

In his Third Ground for Relief, Petitioner claims he was denied a fair trial because of death threats from Anthony Murphy, a man he identifies now as the person who stabbed Timothy Wiley, at least according to Justin Higgins.

This is a very serious matter.   Our system of justice cannot function properly if victims, witnesses, and defendants are intimidated with death threats from testifying or informing the police of what they know about crimes.

Perkins raised this issue as a claim in his post-conviction relief petition and it was rejected by the Common Pleas Court and the court of appeals.   In affirming denial of relief, the Second District held in part:

> [*P18]   Perkins argues that he was not able to present materially exculpatory evidence at trial because he was "under threat of death by the real assailant" if he testified at the trial or told the police who committed the offenses. The alleged threats were all made prior to the criminal trial, with the exception of an alleged threat by Perkins' attorney's step-daughter. Perkins further alleges that his attorney's step-daughter was dating the "real assailant."

> [*P21]   In this matter, Perkins could have raised the issue of the alleged threats to the court during his trial. In addition, since this information was known to him at the time of his trial, he could have raised this issue in his direct appeal to this court. However, since he failed to do so, he is barred from raising this issue at this time pursuant to the doctrine of res judicata.

> [*P22]   At trial, Perkins chose not to testify as to the identity of the individual he believes to be responsible for the crime. It was Perkins' freely-made choice not to testify. There was no state action

that prevented him from testifying and identifying the individual he believes to be the perpetrator. State action is required for a deprivation of a constitutional right to occur. *See, e.g., State v. Roe* (1989), 41 Ohio St.3d 18, 23, 535 N.E.2d 1351. Therefore in addition to being barred by the doctrine of *res judicata*, Perkins' claim fails because there was no state action preventing Perkins from testifying.

*Perkins 2.*

The Magistrate Judge believes the court of appeals' reliance on *res judicata* doctrine is a misapplication of Ohio's criminal *res judicata* doctrine: Perkins could not have raised this claim on direct appeal because it was not supported by material in the record, but rather on material added to the record after trial.

Nevertheless, the *res judicata* holding is an alternative holding. The court of appeals also held that there was no state action interfering with a fair trial by virtue of these threats. The Constitution only limits actions of persons acting in the name or place of the State. A private person may act under color of state law if he is a willful participant in a joint activity with the State or its agents. *United States v. Price*, 383 U.S. 787, 794 (1966). There must be a sufficiently close nexus between the state and the conduct challenged so that defendant is treated as a state actor and defendant's act is treated that of the state. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982), *quoting Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974); *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 937 (1982). But the "[Fourteenth] Amendment erects no shield against merely private conduct, however discriminatory or wrongful." *Burton v. Wilmington Parking Auth*., 365 U.S. 715, 721(1961), *quoting Shelly v. Kraemer*, 334 U.S. 1, 13 (1948). Mr. Perkins does not allege and there is no evidence that Anthony Murphy was in any way a state actor in making the death threats.

Therefore the Second District's decision on this claim is neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent and is entitled to deference. Petitioner's Third Ground for Relief is without merit and should be dismissed with prejudice.

### Ground Four:   Juror Misconduct

In his Fourth Ground for Relief, Perkins claims he was denied a fair trial by two instances of juror misconduct. First of all, he asserts a juror by the name of Don Cochran drank alcohol to the point of intoxication at lunch on the second day of the trial, August 12, 2008 (Petition, Doc. No. 1, PageID 20). Second, he asserts an "old black jury member (name unknown to the Defendant) was sleeping during most of the testimony of Billie Ritchie . . . on the third day of trial." *Id*.

This claim was also presented to the court of appeals on appeal from denial of post-conviction relief. The court of appeals held:

> [*P23]   In his second claim for relief, Perkins alleges that he was denied his due process and equal protection rights due to two instances of juror misconduct. "[U]nder Crim.R. 33(A), juror misconduct justifies a new trial only if it materially affected an accused's substantial rights." *State v. Adams*, 103 Ohio St. 3d 508, 2004 Ohio 5845, at ¶45, 817 N.E.2d 29. Moreover, the burden is on the party alleging juror misconduct to establish prejudice. Id. at ¶42, citing *Smith v. Phillips* (1982), 455 U.S. 209, 215-217, 102 S. Ct. 940, 71 L. Ed. 2d 78.

> [*P24]    Perkins alleges two separate incidents of juror misconduct. In the first instance, one juror allegedly drank alcohol at lunch during the trial. Perkins relies on information collected by Melinda Wells. Wells, in her affidavit, claims to have spoken with

an employee of Frank's Tavern, who allegedly served alcohol to a member of the jury in Perkins' case. However, Perkins did not obtain an affidavit from anyone who saw the juror consume alcohol.

[*P25] In assessing petitions for postconviction relief, the trial court may deem affidavit testimony to lack credibility. *State v. Calhoun,* 86 Ohio St.3d at 285. Factors that may be considered include, but are not limited to, whether the affidavits contain or rely on hearsay and whether the affidavits are from parties interested in petitioner's success. *Id.,* citing *State v. Moore* (1994), 99 Ohio App.3d 748, 754-756, 651 N.E.2d 1319. In this case, the trial court did not find Wells' affidavit to be persuasive. The trial court had sufficient evidence to reach that conclusion, as the affidavit relied on hearsay and Wells is an interested party.

[*P26] Finally, even if this allegation were true it cannot automatically be classified as juror misconduct. Perkins would have to show actual prejudice from the juror's actions, which he has not done. *State v. Hipkins* (1982), 69 Ohio St.2d 80, 83, 430 N.E.2d 943. Presumably, had the juror consumed enough alcohol to become intoxicated, the trial court, the attorneys, court personnel, or other jurors would have noticed his or her condition.

[*P27] In the second instance of alleged juror misconduct, a juror allegedly fell asleep during the trial. To support his claim, Perkins submitted the affidavit of Sheree Prewitt along with his own affidavit adopting the entire statement of facts from his postconviction petition. In his affidavit, Perkins claims to have learned about the sleeping juror from Wells. If a juror would have been sleeping during the trial, it should have been noticed by the attorneys or the trial court, and raised at that time. The purpose of raising the issue during the trial itself is that the trial court has significant discretion in how it resolves an incident with a sleeping juror. *State v. Sanders*, 92 Ohio St.3d 245, 253, 2001 Ohio 189, 750 N.E.2d 90. (Citations omitted.) In addition, to demonstrate prejudice, Perkins needed to assert the exact testimony that the sleeping juror missed. See, e.g., *State v. McKnight*, 107 Ohio St. 3d 101, 2005 Ohio 6046, at ¶187, 837 N.E.2d 315. Finally, if Perkins had knowledge of the alleged juror misconduct during trial, he is precluded from raising this issue under the doctrine of res judicata, since he could have raised this issue in his direct appeal.

[*P28] Moreover, the issue of juror misconduct was raised at sentencing by Perkins' attorney. While Perkins' attorney did not

specify the basis for the misconduct, he informed the court that, after investigating the matter, he determined it was not worth pursuing. Accordingly, this additional factor supports the proposition that Perkins' claims are barred by res judicata.

*Perkins 2.*

With respect to the first claim of juror misconduct, the court of appeals found Wells' affidavit was not sufficiently credible to warrant relief. That conclusion is not an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Melinda Wells is an interested witness. Moreover, if Juror Cochran was intoxicated, how does it happen that no one in the trial noticed it? If it was noticeable and no objection was made at the time, Petitioner has procedurally defaulted this claim by not raising it on direct appeal, as the court of appeals held.

This objection is even clearer as to the sleeping juror. That conduct was surely observable in the courtroom at the time it occurred, yet no contemporaneous objection was made.

Petitioner's Fourth Ground for Relief should be dismissed with prejudice.

## Ground Five: Witness' Failure to Cooperate

In his Fifth Ground for Relief, Petitioner asserts he was denied a fair trial because one of his witnesses, Karen Ledbetter, avoided calls from his attorney and from the police because she was working in the bar where the fight occurred, apparently in violation of the conditions of her probation, and was afraid her probation officer would find out.[2] According to Melinda Wells,

---

[2] Ledbetter's statement to Ms. Wells (Petition, Doc. No. 1, PageID 21) is equivocal on whether her conditions of probation forbade her working in a bar or this particular bar; she merely said she did not want her probation officer to find out.

Ledbetter was prepared to testify that she saw who hit all three victims and it was not Jesse Perkins.

This claim was raised in postconviction and in the motion for new trial. The court of appeals rejected this claim, noting that numerous witnesses testified at trial that Perkins was innocent. *Perkins 2* at ¶ 33. Moreover, the evidence was not newly-discovered, at least as to the witness' identity, because Perkins' lawyer had attempted to reach her before trial. *Id.* at ¶ 34. Finally, Perkins had told the post-conviction court that he would use the subpoena power to obtain Ledbetter's testimony if he were granted an evidentiary hearing. *Id.* He makes the same claim in his Petition here (Doc. No. 1, PageID 22).

Under the Compulsory Process Clause of the United States Constitution, a criminal defendant does not have to take "no" for an answer from a reluctant witness. Rather, on a showing of good cause to believe a witness has useful testimony, a court must issue a subpoena for such a witness and have it served by the Sheriff. Witnesses who fail to respond can be arrested and held in contempt of court and indeed kept in jail until they testify. Here Perkins' counsel and the police knew of Ledbetter's whereabouts (her phone number and where she worked). They could easily have learned from a records check that she was on probation and have contacted her through her probation officer.

In sum, Ledbetter's testimony was not unique and not "newly-discovered." The decision of the Ohio courts rejecting this claim is neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent. The Fifth Ground for Relief should be dismissed with prejudice.

## Ground Six: Defense Witness Perjury

In his Sixth Ground for Relief, Perkins claims that one of the defense witnesses, Amy Price, perjured herself at trial by denying that she knew the name of the person who was arguing with Adam Volkerding just before Volkerding was assaulted. When contacted by Melinda Wells, Ms. Price did not actually admit lying at trial, but said she kept Anthony Murphy's name secret because she is scared of him "and the physical repercussions that might follow if I was to tell on him." (Wells' Affidavit, PageID 263.)

The court of appeals also considered this claim on the appeal from denial of post-conviction and a new trial. It held:

> [*P35] In his fifth claim for relief, Perkins alleges that he was denied his due process and equal protection rights under the Ohio and U.S. Constitutions when a witness, Amy Price, purposefully withheld the name of the man she saw arguing with Adam Volkerding, one of the victims.
>
> [*P36] At trial, Price testified that Perkins did not commit the offenses in question. Instead, Price claimed in her testimony that the perpetrator was a much taller and larger man than Perkins. Price's testimony was detailed and very much supported Perkins' defense. It is unlikely that if Price identified whom she believed to be arguing, the outcome of the case would change. Simply stated, at trial, Price's testimony suggested that an unnamed individual was the actual assailant. The name of that person was not relevant. The sole question before the jury was whether Perkins was the assailant. If the jury believed Price's testimony, it could have found Perkins not guilty.
>
> [*P37] Furthermore, Perkins again relies on Wells' affidavit instead of obtaining an affidavit from Price. As such, the affidavit is nothing more than hearsay. For these reasons, Perkins' fifth claim for relief was correctly disposed of by the trial judge.

*Perkins 2.*

The gravamen of the court of appeals' decision is that Price's testimony at trial was that someone of a very different physical description from Perkins was the person who assaulted Adam Volkerding. As far as the Petition shows, the jury did not know Anthony Murphy's name or what he looked like. If the defense had presented the claim that Murphy was the perpetrator and had presented other evidence to that effect, Price's complete testimony with Murphy's name might have been material. But even Perkins did not bring Murphy's name forward to his own attorney prior to trial. Price's testimony was material on identification of who did not commit the Volkerding assault – Jesse Perkins. As the court of appeals held, the name of the man who Price testified committed that assault was not material.

Therefore the determination of the court of appeals that Perkins was not convicted on materially perjured testimony is not an unreasonable determination of the facts based on the evidence presented at trial. The Sixth Ground for Relief should be dismissed with prejudice.

## Ground Seven:   Failure to Preserve Exculpatory Evidence

In his Seventh Ground for Relief, Perkins accuses the police of bad faith failure to retain exculpatory evidence, to wit, the assault weapons:   a pool stick and a broken beer bottle.

Perkins raised this issue as part of his only assignment of error on direct appeal. The court of appeals held:

> [*P32]   Finally, although the investigating officer indicated that he had been relatively new at his job, and that, in hindsight, he would have performed a more complete investigation at the scene, there is nothing in this record to support a finding that the initial investigation resulted in a wrongful conviction. The outcome of this case depended on the jury's evaluation of eyewitness testimony,

including the jury's assessments of the credibility of the various witnesses.

*Perkins 1*.  This shows that the investigating officers were cross-examined about the lack of physical evidence and their failure to preserve it was placed before the jury.  Under the circumstances, the lack of physical evidence might have been more persuasive than its presence, given that there is no proof of what the pool stick or beer bottle would have shown.  Perkins claims that he knows Murphy was not wearing gloves that night, but Perkins did not testify when he could have.  Perkins offers no proof of bad faith or even that the investigating police officers were negligent.  Perkins makes the usual argument that forensic evidence would have been conclusive, but that ignores the question of how many people may have touched a pool cue in common use in the bar or even the beer bottle.

Perkins raised this claim again on appeal from denial of post-conviction relief and the court of appeals held:

> [*P44]  As the issue of possibly exculpatory evidence not being retained by the police investigators was raised on direct appeal, it is barred by the doctrine of res judicata. Furthermore, Perkins does not show that the evidence was exculpatory. Had the pool stick used against the victims been retained it would not have presumptively served to exculpate Perkins. Perkins' theory that the pool stick may have contained DNA or fingerprint evidence is speculative. It is equally possible that no such evidence could have been recovered from that object. As a result, the trial judge correctly overruled Perkins' petition for postconviction relief based on the police not preserving possibly exculpatory evidence.

*Perkins 2*.

The Supreme Court has held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due

process of law." *Arizona v. Youngblood*, 488 U.S. 51 (1988). The court of appeals' two decisions on this claim are neither contrary to nor an objectively unreasonable application of that case law. The Seventh Ground for Relief should be dismissed with prejudice.

## Ground Eight:   Failure to Hold Evidentiary Hearing or Grant New Trial

In his Eighth Ground for Relief, Petitioner claims he was denied due process when the state courts did not hold an evidentiary hearing on his post-conviction petition and motion for new trial and when a new trial was not granted. The only specific claim Perkins makes under the Ground for Relief is that the name and testimony of Stephanie Caudill were newly and diligently discovered after trial and are material to his guilt or innocence (Petition, Doc. No. 1, PageID 28).

The court of appeals dealt with this claim on the second appeal and held:

> [*P62]   In his fourth claim for a new trial, Perkins identifies a new witness. The witness, Stephanie Caudill, was discovered by Wells and was allegedly present at the bar the night in question. However, Perkins notes that "she left the bar before the assaults had happened." Because she was not present at the time of the altercation, her testimony does not have a strong probability of leading to a different result if a new trial is granted. Furthermore, Perkins failed to demonstrate that Caudill could not be located before the trial. For these reasons, the trial court correctly overruled Perkins' motion for new trial based on the newly-discovered witness.

*Perkins 2*.

There is no federal constitutional right to an evidentiary hearing on a motion for new trial in state court, so the denial of a hearing did not deprive Petitioner of any federal constitutional right. The court of appeals' decision on Caudill's possible testimony is not an unreasonable

determination in light of the facts before the state courts. She was not present at the time of the assaults. While she can place Anthony Murphy in the bar that night, so can Perkins as well as many other people. Her testimony simply does not cast doubt on the jury verdicts. The Eighth Ground for Relief should therefore be dismissed with prejudice.

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

July 31, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).